IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOROTHY MARIE ANN FAHY** | : | CIVIL ACTION |
| | : | |
| v. | : | 06-CV-366 |
| | : | |
| **MICHAEL J. ASTRUE,** *Commissioner of the* | : | |
| *Social Security Administration* | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                       June    26,  2008

      Plaintiff Dorothy Marie Ann Fahy ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 201-234, 1381-1383h.  Plaintiff and the Commissioner have filed cross motions for summary judgment.  United States Magistrate Judge David R. Strawbridge has submitted a Report and Recommendation, see 28 U.S.C. § 636(b)(1)(B); Local R. Civ. P. 72.1(d)(1)(c), recommending that Plaintiff's Motion for summary judgment be granted in part and denied in part, and that the matter be remanded to the Commissioner for further proceedings.

      Because Defendant has objected to the Magistrate Judge's Report and Recommendation, this Court must "make a de novo determination of those portions of the record or specified proposed findings or recommendations to which objection is made."  28 U.S.C. §636(b)(1)(c).  Having reviewed the Report and Recommendation and the objections thereto, the Court will approve and adopt the Report and Recommendation.

**I.  Procedural History**

      On September 24, 2003, Plaintiff applied for SSI benefits, alleging disability due to bipolar disorder, obsessive-compulsive disorder, depression, and post-traumatic stress disorder.

R. at 71-73.  Her application initially was denied on January 9, 2004.  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 26, 2004.  R. at 30-59.  The ALJ heard testimony from Plaintiff, her case manager, a medical expert, and a vocational expert.  On December 16, 2004, the ALJ denied Plaintiff's claim for benefits.  R. at 13-15.  On December 6, 2005, the Appeals Council denied Plaintiff's request for review.  R. at 4-8.  Plaintiff commenced this action in January 2006, seeking review of the decision.

## II.  Standard of Review

### A.  The Commissioner's Decision

Judicial review of a Social Security case is based upon the pleadings and the transcript of the record.  42 U.S.C. § 405(g).  The scope of the Court's review of the Commissioner's decision is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  See Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).

"The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)); see also Plummer, 186 F.3d at 427 (noting that "substantial evidence" has been defined as "more than a mere scintilla").  The standard is "deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence."

Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).  In sum, "[t]he court cannot conduct de novo review of the Commissioner's decision or re-weigh the evidence of record." Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998).

### B.  The Magistrate Judge's Report and Recommendation

The Court, however, must engage in a de novo review of those portions of the Magistrate Judge's Report and Recommendation to which Defendant has objected.  See 28 U.S.C. § 636(b)(1)(c).  The Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate." Id.  In considering Defendant's objections to the Report and Recommendation, the Court has independently reviewed the entire record, including the Report and Recommendation, the ALJ's decision, the transcript of the hearing, the hearing exhibits, and the summary judgment briefs.

## III.  Social Security Law

Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income program.  See 42 U.S.C. § 1382(a).  "Disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The Act further provides:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.  For purposes of the preceding sentence

> (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 1382c(a)(3)(B). The claimant carries the initial burden of proving disability. See Plummer, 186 F.3d at 428. Once the claimant establishes an inability to perform her prior work, the burden then shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. Id.

Under the Social Security regulations, an application for disability benefits is evaluated according to a five-step sequential process. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920. This process requires the presiding ALJ to review: (1) claimant's current work activity; (2) the severity of the impairments; (3) whether the impairments, considered alone or in combination, meet or equal any listing set forth in Part 404, Subpart P, Appendix 1, which would result in a conclusive presumption of disability; (4) whether claimant's residual functional capacity ("RFC") allows her to perform her past relevant work; and, if not, (5) whether claimant's specific RFC, in conjunction with a consideration of her age, education, and work experience, prevents her from performing other work that exists in the national economy. The claimant is entitled to disability benefits only if she is not able to perform such other work.

## IV. The ALJ's Decision

Using this sequential evaluation process, the ALJ determined that Plaintiff had satisfied the requirements of the first step because she had not engaged in any substantial gainful activity since the alleged onset of her disability. R. at 17. Next, the ALJ found that Plaintiff suffers from depression and bipolar disorder as well as a substance abuse impairment, all of which cause significant vocationally relevant limitations. R. at 18. At step three, the ALJ found that

Plaintiff's impairments, combined, meet the criteria of listing 12.04 (Affective Disorders) and listing 12.09 (Substance Addiction Disorders). Having determined that Plaintiff's impairments, including her substance abuse problems, rendered her disabled, the ALJ considered whether Plaintiff would be found to be disabled if the substance abuse stopped. See 20 C.F.R. § 416.935. A plaintiff is not entitled to social security benefits if alcoholism or drug addiction is a contributing factor material to the Commissioner's determination that the individual is disabled. See 42 U.S.C. § 423(d)(2)(c). Therefore, if Plaintiff's impairments, excluding the substance abuse impairment, are not disabling in themselves, then the substance abuse impairment is "a contributing factor material to the determination of disability." 20 C.F.R. § 416.935. If, however, the impairments are disabling independently of the effect of substance abuse, then the substance abuse impairment is not a contributing factor. Id. The ALJ determined that Plaintiff had an extensive history of alcohol and cocaine abuse, and that her mental disorders, excluding the effect of her substance abuse, do not meet the degree of functional limitations of Listing 12.04. R. at 18-19.

At step four, the ALJ concluded that Plaintiff has no exertional limitations and that she retains the RFC to perform the exertional demands of all levels of work. He also determined that Plaintiff retains sufficient attention and concentration to understand, remember, and follow instructions, but is limited to unskilled work, and cannot return to her past relevant work. R. at 21-22.

Once Plaintiff has established that she cannot perform her past relevant work, the burden shifts to the Social Security Administration to demonstrate that other jobs exist in the national economy that Plaintiff can perform, given her capacity. The ALJ concluded that Plaintiff's

ability to perform at all exertional levels is not significantly compromised by her non-exertional limitations, and that there are a significant number of jobs in the national economy that she could perform. Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Act. R. at 23.

## V. The Magistrate Judge's Report and Recommendation

In his Report and Recommendation, Magistrate Judge Strawbridge recommended that this matter be remanded to the Commissioner due to the following errors: (1) substantial evidence did not support the ALJ's finding that Plaintiff's drug and alcohol abuse (DAA) was a contributing factor material to the determination of disability; (2) the ALJ erroneously applied the Medical-Vocational Guidelines or "Grids" where Plaintiff had suffered from non-exertional impairments; and (3) the ALJ's credibility determinations were unsound because he did not consider whether there were good reasons for Plaintiff's non-compliance with medical treatment.

## VI. Analysis

Defendant has objected to the Magistrate Judge's recommendation on each of aforementioned three bases.

### A. DAA Materiality

In concluding that substantial evidence did not support the ALJ's finding on the materiality of the DAA, the Magistrate Judge noted that the ALJ disregarded the Commissioner's Emergency Teletype 96200, which provides that in cases where it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorders shown by the evidence, a finding of "not material" is warranted. See Social Security Administration Emergency Teletype, response to question 29 (Aug. 30, 1996), *available at*

*http://www.ssas.com/daa-q&a.htm*.  "The most useful evidence that might be obtained in such cases is that relating to a period when the individual was not using drugs/alcohol, [and] consideration must be given to the length of the period of abstinence, how recently it occurred, and whether there may have been any increase in the limitations and restrictions imposed by the other mental impairments since the last period of abstinence."  Id.; see also Salazar v. Barnhart, 468 F.3d 615, 623 (10th Cir. 2006); Stuart v. Barnhart, 2003 WL 1054014, at *3 (D. Kan. Feb. 24, 2003); Christidis v. Massanari, 2001 WL 1160846, at *9 (N.D. Ill. Oct. 1, 2001).  The Magistrate Judge found that the ALJ did not fully and adequately explore the extensive medical history in the record that reflects periods during which Plaintiff abstained from drug and alcohol abuse.

Defendant contends that the Magistrate Judge erred in this finding because the ALJ properly relied on the opinions of a medical expert and state agency physician, who opined, based on the entire record, that Plaintiff's symptoms improved in the absence of DAA.  See Objections, at 3-4.  Defendant further argues that the Magistrate Judge's conclusion that the ALJ gave conflicting analyses as to the consultative examiner and state agency physician's opinions was unsupported, because the consultative examiner provided an opinion including the effects of DAA, and the state agency physician provided an opinion absent the effects of DAA.  See id. at 5.

The Court concurs with the Magistrate Judge's conclusion that there is a marked absence in the ALJ's opinion of discussion of the multiple periods of abstinence that are revealed in the record.  The ALJ's conclusion that "it does not appear that [Plaintiff] has had any extensive period of sobriety," R. at 20, is negated both by Plaintiff's testimony that she had been abstinent

for over a year, as well as testimonial and documentary evidence of significant periods of sobriety. For instance, Renee Bennett, Plaintiff's Intensive Case Manager, testified that even during periods of abstinence, Plaintiff continued to experience the severe effects of her other mental disorders:

| | | |
|---|---|---|
| Atty: | | Are you aware of both her periods of sobriety and her relapses? |
| Bennett: | | Yes, I am. There's been some relapses over the three years that I've worked with her, but I absolutely can say that [Plaintiff] does not use currently. She has times when she has relapse, periods of relapse ... but there's been times, long periods actually, [when] there was no drug use at all, and yet she still seemed to have rapid cycling, problems with the medications, a lot of depression, crying, feeling overwhelmed with everything. |
| Atty: | | Is she in remission now? |
| Bennett: | | Yes. [...] |
| Atty: | | And before that? |
| Bennett: | | A year. |

Testimony of Renee Bennett, R. at 38-39. A Psychosocial History and Assessment dated January 16, 2002 noted that "client has been abstinent since 10/22 from crack cocaine. Symptoms of Bipolar Disorder have increased since stopping substance abuse." R. at 117, 120-21. In addition, an RFC assessment dated December 26, 2003 states that Plaintiff is "in current remission" and is "reportedly D & A free." R. at 139.

The ALJ's failure to discuss these significant periods of abstinence contravenes the Teletype's directive that "consideration must be given to the length of the period of abstinence" as well as the directive contained in 20 C.F.R. § 416.935 requiring the ALJ to "evaluate which of [Plaintiff's] current physical and mental limitations ... would remain if [Plaintiff] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(2). As the Magistrate Judge notes, in the absence of

discussion of the periods of abstinence, the Court cannot determine whether the ALJ adequately considered them. Accordingly, the Court will remand this matter to the ALJ to reconsider the materiality of Plaintiff's DAA. See Salazar, 468 F.3d at 624; Stuart, 2003 WL 1054014, at *3.[1]

2. Application of "Grids"

At the final step of his analysis, the ALJ determined that Plaintiff was not disabled and could engage in substantial gainful employment. In so concluding, the ALJ relied on the Medical Vocational Guidelines, also known as "Grids." The Grids were promulgated by the Commissioner in order to establish the types and number of jobs that exist in the national economy for claimants with exertional impairments. See 20 C.F.R. § 416.969. They consist of a matrix of four factors including physical ability, age, education, and work experience, and provide guidance as to whether a particular combination of all four factors direct a conclusion of "disabled" or "not disabled." See id; see also Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

Because the ALJ determined that Plaintiff suffered only *nonexertional* limitations, Plaintiff argues that reliance on the Grids was inappropriate in assessing whether or not she was disabled. R. at 55-56.[2] As Defendant concedes, the general rule is that reliance on the Grids in lieu of an individualized assessment by a vocational expert is inappropriate in cases of pure nonexertional limitations because the Grids are designed to address primarily exertional

---

[1] Moreover, as Plaintiff notes, the ALJ's observation that "it does not appear that [Plaintiff] had any extensive periods of sobriety," R. at 20, if taken as true, supports a finding of disability under the express language of the Emergency Teletype, which provides that "where it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorders shown by the evidence, a finding of 'not material' is warranted."

[2] Mental impairments are generally considered to be nonexertional. See SSR 85-15.

limitations. However, the Social Security Administration has created an exception, stating that an ALJ may refer to the Grids when he relies on a Social Security Ruling (SSR) "that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects the claimant's occupational job base." AR 01-1(3); see also Allen v. Barnhart, 417 F.3d at 396, 404 (3d Cir. 2005).[3]

The ALJ applied this exception in Step 5 and referred to SSR 85-15 instead of relying on the testimony of the vocational expert. The purpose of SSR 85-15 is to provide a "framework for decisions concerning persons who have only a nonexertional limitation(s) of function." SSR 85-15, 1985 WL 56857, at *1 (1985).[4] Despite Plaintiff's argument that the ALJ erred, the ALJ's decision to apply SSR 85-15 was not per se improper. See Allan, 417 F.3d at 404 (holding that in a case involving purely nonexertional limitations, "the ALJ's use of the [Grids] as a framework in this case, and his reliance upon an SSR at Step 5 to determine [the plaintiff's] occupational job

---

[3] The exception was drafted as part of an "Acquiescence Ruling" issued by the Commissioner in response to the Third Circuit's decision in Sykes, 228 F.3d 259. In that case, the court held that "the Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact." Id. at 261.

[4] SSR 85-15 includes examples of persons with nonexertional impairments and the effect of those limitations on their ability to perform certain types of work. For instance, Example 3 provides:
> Someone who is closely approaching retirement age, has a limited education or less, worked for 30 years in a cafeteria doing an unskilled job as a "server," almost constantly dealing with the public, and now cannot, because of a severe mental impairment, frequently deal with the public. In light of the narrowed vocational opportunity in conjunction with the person's age, education, lack of skills, and long commitment to the particular type of work, a finding of disabled would be appropriate; but the decision would not necessarily be the same for a younger, better-educated, or skilled person.

base is not an improper application of either the case law or rules established by the Agency").

However, reference to the SSR does not end the inquiry. While the Social Security Administration "can use its rules as a substitute for individualized determination [by a vocational expert], nonetheless, there must be a 'fit' between the facts of a given case, namely, the specific nonexertional impairments, and the way in which the Rule dictates that such nonexertional limitations impact the case." Id. at 406. The Magistrate Judge found that there was no "fit" between the facts of this case and the way in which they impact Plaintiff's ability to work. More specifically, there was an apparent inconsistency between the ALJ's conclusion that Plaintiff had "moderate" impairments and his determination that her ability to perform work is not significantly compromised. Defendant objects to the Magistrate Judge's finding, arguing that there was a fit between Plaintiff's nonexertional limitations and the occupations contemplated in the Grids, and that Plaintiff's nonexertional limitation to unskilled work "already captured these moderate limitations." Objections, at 7.

The Third Circuit has expressly held that "if the Secretary wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." Allan, 417 F.3d at 407 (emphasis added). At Step 5 of his analysis, the ALJ stated in summary fashion that "claimant's ability to perform work at all exertional levels is not significantly compromised by her non-exertional limits," but failed to discuss any of Plaintiff's limitations or how SSR 85-15 is probative of the way in which these limitations impact Plaintiff's ability to work. See id. at 404. SSR 85-15, by its own terms, makes clear that it is a mere framework, and does not "direct conclusions of disabled or not disabled." Although the

ALJ summarily states that there are numerous jobs in the economy that Plaintiff can perform that do not require special skill or experience, he cites none of the categories or examples listed in SSR 85-15, and makes no effort to explain how Plaintiff's specific impairments would impact her ability to perform unskilled work.  Because the ALJ has failed to make "crystal clear" that the SSR is probative as mandated by the Third Circuit, and because the Court cannot determine, based on the current record, whether the ALJ's reliance on the SSR as a substitute for the individualized assessment of a vocational expert was proper, remand to the Commissioner is appropriate.

      3.  Credibility Assessment

At step three of his analysis, the ALJ stated that he had "reservations as to whether [Plaintiff's] assertions concerning her impairments" were credible. R. at 22.  He based this assessment, in part, on Plaintiff's noncompliance with her treatment and psychotropic medications.  It is well-established that a claimant's refusal to follow medical treatment without good reason will preclude a finding of disability.  See 20 C.F.R. § 416.930.  The Magistrate Judge determined that the ALJ's conclusion that Plaintiff's failure to comply with treatment rendered her ineligible for disability benefits was compromised by his failure to consider whether there were "good reasons" for Plaintiff's noncompliance.

Defendant objects to the Magistrate Judge's finding, arguing that 20 C.F.R. § 416.930 is inapplicable to this case because it pertains solely to situations where a claimant is disabled but would be found not disabled if he or she followed the prescribed treatment.  Since the ALJ never found that Plaintiff was disabled absent the effects of DAA but would be found not disabled had she complied with treatment, he was not required to comply with 20 C.F.R. § 416.930.  While

Defendant is correct in its assessment of the applicability of both 20 C.F.R. § 416.930 and SSR 82-59, the relevant provision in this instance is SSR 96-7p, which applies when an ALJ must assess the credibility of an individual's statements.  See Roberts v. Shalala, 66 F.3d 179, 183 (9th Cir. 1995); Conner v. Barnhart, 2005 WL 1939951, at *4 (S.D. Ind. June 28, 2005).  SSR 96-7p provides, in pertinent part, that:

> [A claimant's] statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.  *However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide*, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7p (emphasis added).  Courts routinely have held that in making credibility determinations, the ALJ must comply with this directive.  See Kinney v. Comm'r of Soc. Sec., 244 Fed. Appx. 467, 470 (3d Cir. 2007); Brindisi v. Barnhart, 315 F.3d 783, 787 (7th Cir. 2003); Brant v. Barnhart, 506 F. Supp. 2d 476, 484 (D. Kan. 2007).

The record reflects that Plaintiff suffered significant adverse side effects from the medication she was prescribed.  She testified that she had severe stomach problems and "threw up all day long," that she experienced blurred vision, and that she had trouble standing.  R. at 44.  Plaintiff's case manager, Renee Bennett, testified that the side effects Plaintiff experienced were so severe that they resulted in hospitalization.  R. at 36-37.  She further testified that Plaintiff missed medical appointments due to severe depression.  R. at 40.  An Initial Comprehensive Assessment completed at Pottstown Memorial Medical Center stated that Plaintiff experienced side effects including "slurred speech, uncontrollable movement, [and a] difficult time speaking."

R. at 186. A progress note from Life Guidance Services dated November 18, 2002 stated that Plaintiff was "toxic on Tegretol," one of the medications she was prescribed. R. at 167.

Because the ALJ did not discuss any of the explanations pertaining to Plaintiff's difficulty complying with medical treatment, the Court cannot determine whether they were considered as required by SSR 96-7p. See Lembke v. Barnhart, 2006 WL 3834104, at *13 (W.D. Wis. Dec. 29, 2006) (finding that the ALJ's reliance on the plaintiff's failure to take medication as a reason to find her not credible was improper under SSR 96-7p because he failed to adequately consider plaintiff's explanations); Purvis v. Barnhart, 2006 WL 3354518, at *3 (S.D. Ind. Nov. 16, 2006) ("The ALJ failed to comply with the Commissioner's own Social Security Ruling 96-7p when he discounted [plaintiff's] credibility because she had so often failed to seek medical help over the years. SSR 96-7p requires the ALJ to consider possible explanations, other than lack of credibility, for such failures."); Ellis v. Barnhart, 384 F. Supp. 2d 1195, 1203 (N.D. Ill. 2005) ("[T]he ALJ could rely on [the claimant's] non-compliance as long as he had first considered [the claimant's] explanations for her non-compliance."). Accordingly, the Court will remand to the Commissioner for reconsideration of the ALJ's credibility determinations.

**VII. Conclusion**

Upon review of the record, the Court agrees with the Magistrate Judge's conclusion that the ALJ's findings were not supported by substantial evidence. Accordingly, Defendant's Objections will be overruled, the Report and Recommendation will be adopted, and the matter will be remanded for further proceedings consistent with this Memorandum. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOROTHY MARIE ANN FAHY** | : | **CIVIL ACTION** |
| v. | : | |
| **MICHAEL J. ASTRUE,** *Commissioner of the* | : | **NO. 06-366** |
| *Social Security Administration* | : | |

### ORDER

**AND NOW**, this 26th day of June, 2008, the Court having considered the parties' Motions for Summary Judgment and reviewed the Report and Recommendation of United States Magistrate Judge David R. Strawbridge, Defendant's Objections thereto, and the entire record, including the ALJ's decision, transcript of the hearing, and hearing exhibits, it is **ORDERED** that:

1. The Report and Recommendation (docket no. 11) is **APPROVED** and **ADOPTED**;

2. Plaintiff's Motion for Summary Judgment (docket no. 8) is **DENIED**;

3. Defendant's Motion for Summary Judgment (docket no. 9) is **GRANTED**; and

4. The Clerk of Court shall mark this case **CLOSED**.

                                                 **BY THE COURT:**

                                                 **/s/ Bruce W. Kauffman**
                                                 **BRUCE W. KAUFFMAN, J.**